NORMAN W. DODGE and others

*v.*

GARRET Q. BROKAW and others.

The defendant Brokaw had an interest in certain lands, under a contract with their owner to build three dwelling-houses thereon and to give the owner $400 for each lot, to be secured by a mortgage thereon, when the lots should be conveyed to him. The contract was made in October, 1874. Complainants advanced materials to him which were used in the buildings, and obtained a judgment for the amount in August, 1875. After expending some $1,600, he was unable to proceed, and applied to complainants for an advance, to be secured by an assignment of the contract and the materials on the ground. The complainants refused, and Kirk thereupon made advances to Brokaw, to finish the buildings and for other purposes, amounting to $12,000, secured by such assignment.—*Held,*

(1) That Brokaw's interest was not subject to levy under execution at law.

(2) That Kirk's assignment, being of an equitable interest, was valid without recording.

(3) That Brokaw's interest, being an equity of redemption, the complainants (the bill is a creditors' bill) are entitled to an account from Kirk, and to have the securities for his debt (he has other security besides the contract) marshalled.

Creditors' bill.    On final hearing on pleadings and proofs.

*Mr. F. C. Marsh* and *Mr. W. C. Spencer*, for complainants.

*Mr. S. B. Ransom*, for defendants Brokaw and Kirk.

THE CHANCELLOR.

The complainants are judgment creditors of the defendant Garret Q. Brokaw.    They seek by this suit to apply to the payment of their judgment, satisfaction of which they have not been able to obtain at law, the equitable interest claimed by the defendant Kirk in certain land and premises (three small building lots and the buildings thereon) in the county of Union.    That interest is claimed by Kirk under a contract between Ferdinand Blancke, the owner of the property, and Brokaw, for the conveyance of the property to the latter for the consideration of $400 for each lot, to be secured by mortgage of the property, on which Brokaw was to build three dwelling-houses, one on each lot, and he was to have the deed when the foundations of the houses were laid.    The contract was made October 7th, 1874.

The complainants' judgment, which was for $1,469.82, was recovered on the 30th of August, 1875.    When the contract was made, Brokaw entered into possession of the lots and proceeded to build the houses, but neither he nor Kirk, to whom he subsequently assigned the contract as hereinafter mentioned, ever obtained a conveyance of the property.    After Brokaw had expended $1,600 or $1,700 on the three houses, he found himself unable to proceed with them (they had all been raised, but were only partly enclosed),

and he then applied to Kirk to lend him money to complete them, on the security of the assignment of the contract and of the materials on the ground. Before applying to Kirk, however, he applied to the complainants (whose debt had then been contracted) for the accommodation on the same terms, but they declined to make the advance. Kirk consented, and, in the month of December, 1874, Brokaw assigned and transferred to him, by a written instrument of that date, drawn by Brokaw, all his "timber and buildings and building materials lying at Roselle and Linden," in Union county (the houses were at the latter place), as security for money lent to Brokaw for his use; and the instrument declared that the understanding was, that as soon as all moneys lent should be repaid, the assignment was to be void, but not otherwise. It was intended thereby to assign to Kirk all Brokaw's interest in the property under the contract.

By an assignment in writing, dated April 20th, 1875, Brokaw, in order the better to effectuate that intention, assigned, transferred and set over to Kirk, the houses and lots, together with the contract, and requested Blancke to convey the property to Kirk in fee, according to the terms of the contract, on Kirk's performing the things and covenants in the contract to be performed and kept on the part of Brokaw. On the security of these assignments, Kirk advanced to Brokaw between $6,000 and $7,000 with which to complete the houses, and he advanced for him other money for other purposes, all his advances amounting, as he alleges, to about $12,000. The bill prays a discovery on oath, and Brokaw and Kirk have answered under oath accordingly. The answer distinctly and explicitly sets forth the agreement between Brokaw and Kirk for the advances on the security of the assignments, and states that the money was advanced accordingly and has not been repaid. It is not only not overcome by proof, but it is sustained by the testimony of Kirk and Brokaw.

Dodge v. Brokaw.

The complainants insist that Brokaw was actuated by a fraudulent intention in making the assignments, and that Kirk knew when they were made that Brokaw was indebted to the complainants, and that their debt was contracted for materials which had been used in the building of the houses; and they insist that, therefore, the assignments should be held to be fraudulent as against them. But there is no evidence of fraud on the part of either Brokaw or Kirk. The former, as before stated, first sought from the complainants the same aid which he afterwards sought and obtained from Kirk on the same security. Kirk advanced the money in good faith, and with it Brokaw was enabled to finish the houses. It may be added that it is proved that the barn and the other out-houses on the property were all built entirely with money advanced by Kirk. After the advances were made, Kirk offered to assign the contract to the complainants, so that they might have the benefit of it, on their paying to him the amount of his advances.

The complainants prove by Mr. McGee, called by them, that after this suit was begun, Kirk made them a proposition of settlement on those terms. The witness says that Kirk said there was nothing in the case, as he believed, but he had no desire to litigate and no desire to get anything more out of the houses than " what they stood him in," and, rather than have any litigation about the matter with the attendant expense, he would be willing that the complainants should make something out of the property if they could. The proposition was communicated to the complainants, and they, or their solicitor for them, declined it on the ground that the property was not sufficiently valuable to justify their taking it at that price.

Mr. Gilson, who was in the employ of the complainants, also their witness, testifies that he, in company with the complainants' solicitor, called on Kirk in reference to the complainants' debt, long before the suit was begun, and that Kirk said then, that all he wanted out of the houses was the money he had advanced.

The complainants' counsel insist that Brokaw's interest in the land was one which was liable to be levied on and sold under the complainants' execution, and that the assignment to Kirk being in fact a mortgage thereon, is invalid against the complainants' judgment, because it was not recorded or registered when the judgment was recovered. But Brokaw's interest in the property was not a legal one. It was equitable merely. His interest under the contract was not the subject of a levy and sale under an execution at law. *Disborough* v. *Outcalt, Sax. 298; Van Cleve* v. *Groves, 3 Gr. Ch. 330.*

And the assignment, if *bona fide,* is effectual as against the complainants, though it was not recorded or registered. No statute rendered recording or registry necessary. Much stress is laid, by the complainants' counsel, on the circumstance that Brokaw, after the assignment of the contract, remained in possession of the property as he had been before that time, which, they insist, is an evidence of fraud in the assignment. But under the circumstances of the case, the circumstance is entitled to no weight. Brokaw was never the owner of the land. He had only the right to a conveyance on compliance with certain terms. He was in possession under the contract and was engaged in building on the property. Kirk undertook to aid him in completing the buildings. There was nothing inconsistent with the *bona fides* of the agreement, in the fact that Brokaw, who was to expend the money which he borrowed from Kirk, in building on the property, should remain in possession, but the contrary. Kirk was a mere lender, lending on the security of the contract.

I find nothing in the case upon which a conclusion that there was fraud, on the part of Kirk, can be based. It may be added, in this connection, that Gilson, the complainants' witness before mentioned, testifies that Kirk told him, in the conversation before referred to, that Blancke had agreed to furnish Brokaw with some money towards building the houses, but had failed to do so, and that Brokaw had come

to him and had told him the position of affairs, and that then he had agreed to advance money to complete the houses; that he had advanced money to Brokaw, and that he thought that, if the complainants kept quiet, there would be money enough coming out of the houses when completed to pay all creditors, and that all he wanted out of the houses was the money that he had advanced. The interest of Brokaw in the equitable property in question, is an equity of redemption merely. To that the complainants are entitled. And they are, therefore, entitled to an account from Kirk and to have his securities for his debt (he has other security than the contract) marshalled. He will, however, the relief sought against him on the ground of fraud being denied, be entitled to his costs of the suit.